## BERRY v. MUTUAL LIFE INS. CO. OF NEW YORK.*

### No. 4456.

Court of Appeal of Louisiana. Second Circuit.

April 28, 1933.

---

Shotwell & Brown, of Monroe, and Montgomery & Montgomery, of New Orleans, for appellant.

Oliver & Digby, of Monroe, for appellee.

DREW, Judge.

Defendant issued an insurance policy upon the life of Ernest W. Berry in the principal sum of $2,000, with a double indemnity provision in case of accidental death. Insured's wife, Minnie H. Berry, was made beneficiary in said policy.

The policy was issued July 9, 1926, and was in force and effect at the time of the death of the insured on December 27, 1931. On that date the insured, while riding on a motor-truck, fell or was thrown therefrom and one of the wheels of the truck ran over him, crushing his chest and body, from which injury he died a few hours later.

The defendant paid the principal sum of $2,000 as provided by said policy, but refused to pay the additional $2,000 claimed under the double indemnity clause of said policy. The widow of the deceased, beneficiary under the policy, filed this suit, alleging the death of the insured was accidental and therefore covered by section 1 of said policy, in that deceased's death was the direct result of bodily injury, effected solely through external, violent, and accidental means independently and exclusively of all other causes.

The defense set up is that the death of the insured was not a direct result of bodily injury effected solely through external, violent, and accidental means independently and exclusively of all other causes, and that his death was contributed to directly by a disease commonly known as "Jake" paralysis, from which insured was suffering at the time, and that it was the proximate cause of his falling from the truck and therefore a proximate cause of his death.

The lower court found for the plaintiff, and defendant has prosecuted this appeal.

The insured died as the result of an accident, and the only question for determination by us is whether deceased's physical condition contributed to the accident to the extent as to become a proximate cause of the accident and resulting death.

Deceased had been suffering from the disease known as "Jake" paralysis, which he contracted about March 26, 1930, and for some time thereafter was totally incapacitated. His condition, however, had greatly improved. He was, just prior to his death, able to drive the truck; could operate the clutch with his foot, as well as put on the brake with his foot. He could walk on smooth ground without use of crutches, but used crutches due to his inability to pick up his feet to step over rough places or any object. He could get on and off a horse and rode horseback. He

loaded wood on a truck. He could place his weight on his feet and stand without the aid of crutches; could shoot a gun. His arms and body from his neck up were as strong as ever. He could pull himself up on a pole five times before touching the ground. Just prior to his death his only trouble seemed to be in his instep, which did not prevent him from placing his weight on his feet but only prevented him from picking his feet up as an ordinary man would. The tendency of all so affected seems to be for the foot from the instep to the toes to droop. There was no evidence to show that the instep would give way when weight was placed on the foot, but all the evidence is to the contrary.

Plaintiff had been helping to haul wood with this truck for some time prior to the accident; got on and off the truck without any assistance, and was far from being totally disabled. On the day of the accident he was riding on the front seat of the truck with his son, who was driving. He was sitting with his right foot on the running board, his left foot in the truck, one hand on the seat, and one on the windshield, a rather awkward position. The truck was a 1½-ton Chevrolet, with 90 pounds of air in the back tires and 30 pounds in the front. The road was rough, and upon approaching a bridge in the road the son changed to second gear, causing the truck to jerk, throwing the insured off and under the wheel of the moving truck. His son described it as follows:

"Q. Did you see anything happen to make your father fall off the truck? A. Yes, sir. When we crossed the bridge it was rough and I put the car in second and it jerked him off."

Defendant offered one witness, whom he asked:

"Q. Please tell the Court just how Mr. Berry fell out of the truck? A. We were driving along there and the road was rough and the wheels dropped into some deep ruts and Mr. Berry fell to the right and the boy could not stop until the truck ran over him. The jar of the truck threw Mr. Berry off."

The truck was traveling at the time at a speed of about fifteen miles per hour.

There is no testimony in the record to show that the condition of deceased contributed in any way to his death.

The defense is based principally on the fact that he was being paid by the insurance company for total disability at the time of his death, and the testimony of one doctor who had examined him last six and one-half months before his death. The theory of the doctor is so completely refuted by the positive testimony as to deceased's physical condition as to render it worthless in this case. The fact that the insurance company was paying him for total disability and had failed to check up on his condition for more than six

months is no reason for refusing the claim of his beneficiary.

It is unnecessary to discuss the question of affirmative defense and burden of proof, as we are convinced that the record clearly shows that the death of the insured was accidental and that he died as a direct result of bodily injuries effected solely through external, violent, and accidental means independently and exclusively of all other causes, and that the physical condition of the deceased did not in any way contribute to his death.

The judgment of the lower court is affirmed, with costs.